IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
02 APR 11 PM 2:25
U.S. [DISTRICT] COURT
N.D. OF ALABAMA

ENTERED
APR 11 2002

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| VS. | ) CV-01-H-901-S |
| | ) |
| ELECTRONIC DATA SYSTEMS CORPORATION, | ) |
| | ) |
| DEFENDANT. | ) |

**MEMORANDUM OF DECISION**

On April 12, 2001 plaintiff commenced this Title VII action seeking relief for Lafayette Hodges, a former employee of defendant, who plaintiff claims was discriminated against by defendant on the basis of his sex. Plaintiff specifically asserts that such discrimination arose over and in connection with the scheduled hours of defendant's employees, including Hodges, to perform business analyst work in connection with services supplied by defendant to BellSouth. Prior to the events at issue the business analysts were divided into four teams; each team included several analysts and had a separate team leader; and the various members of the teams worked a wide variety of hours between 7:00 a.m. and 5:00 p.m. For reasons unimportant to the issues in this case, defendant decided to keep the four teams and their leaders but to have all team members perform their work

during one of two shifts, either between 7:00 a.m. and 4:00 p.m. or between 8:00 a.m. and 5:00 p.m.  Sheila Wildes, the supervisor of the four team leaders, randomly assigned the business analyst to the two shifts, and this resulted in many of the analysts, including Hodges, having a change in working hours.  Plaintiff charges that Hodges' change from a 7:00 a.m. - 3:30 p.m. shift to a 8:00 a.m. - 5:00 p.m. shift discriminated against him on the basis of his sex.  Plaintiff also asserts that, because of childcare problems, Hodges was not able to work the new schedule, resulting in defendant terminating Hodges' employment, which termination was therefore discrimination against Hodges because of his sex.

    The court has before it the February 19, 2002 motion of defendant for summary judgment.  The motion seeks judgment in favor of defendant, asserting that plaintiff cannot make out a *prima facie* case of work assignments which discriminated against Hodges because of his sex and asserting that DeMarco Johnson, the female with whom plaintiff compares Hodges, was not similarly situated with Hodges.  To the extent plaintiff seeks to use the same female comparator with regard to the alleged unlawful termination of Hodges, defendant also points out that the comparator was not similarly situated.  Further, with regard to the alleged unlawful termination, even if plaintiff has made a *prima facie* case of discrimination on the basis of sex, defendant seeks summary judgment as to that claim asserting that plaintiff

cannot show defendant's articulated reason was a pretext for discrimination on the basis of sex.

The parties have submitted extensive evidence and briefs in support of their respective positions on the issues raised by the motion for summary judgment. On pages two through ten of defendant's February 19, 2002 brief there is a chronology of relevant facts with evidentiary support noted; and on pages two through nine of plaintiff's March 27, 2002 brief there is likewise a chronology of relevant facts with evidentiary support noted. No useful purpose can be served by a recitation of those facts here. The court accepts as fact (but not any opinions or conclusion stated with regard to such fact) those factual statements by plaintiff in its brief. Further, <u>except</u> where any factual statement is expressly disputed by plaintiff's factual statement in its brief, the court accepts as fact (but not any opinion or conclusion stated with regard to such fact) those factual statements by defendant in its brief. Pursuant to the February 20, 2002 order, the motion for summary judgment is now under submission.

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1023 (11th Cir. 2000). The party

3

asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the

moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. <u>Fitzpatrick</u>, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If

the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. Lewis v. Casey, 518 U.S. 343 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). The Court is aware that the summary judgment rule applies in job discrimination cases just as in other cases. See Chapman, 229 F.3d at 1025 (rejecting an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side of the scale).

The analysis of the plaintiff's claims will be determined not only by the nature of the allegations but also by the quality of the evidence offered in support of those claims. See Standard v. A.B.E.L. Servs., 161 F.3d 1318, 1330 (11th Cir. 1998), (noting that "[t]he analytical framework and burden of production var[y] depending on the method of proof chosen"). In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics. See id.; see also Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999) (recognizing the availability of either direct or circumstantial evidence). A

6

plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon. See Combs v. Plantation Patterns, 106 F.3d 1519, 1537 (11th Cir. 1997); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987). Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption." Burns v. Gadsden State Community College, 908 F.2d 1512 (11th Cir. 1990). Cf. Wright v. Southland Corp., 187 F.3d 1287, 1293-94 (11th Cir. 1999) (per Tjoflat, J.) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that definition).

Here, plaintiff has presented only circumstantial evidence of racial discrimination. "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)." Combs, 106 F.3d at 1527. Under the McDonnell Douglas and Burdine framework, the plaintiff first has the burden of establishing a *prima facie* case of discrimination, which creates a rebuttable presumption that the

employer acted illegally. See id. at 1527-28. The methods of presenting a *prima facie* case, as well as the exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation. See, e.g., Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984); Lincoln v. Board of Regents of Univ. Sys., 697 F.2d 928, 937 (11th Cir. 1983). In general, a plaintiff establishes a *prima facie* case of disparate treatment employment discrimination by showing that he or she was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly.[1] See McDonnell Douglas, 411 U.S. at 802 (hiring); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); see also Nix, 738 F.2d at 1185 (discipline); Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 F.2d 1071, 1074 (5th Cir. 1981) (wages).

Once the plaintiff has shown a *prima facie* case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate,

---

[1] See also McDonnell Douglas, 411 U.S. at 802 n.13 ("The facts necessary will vary in Title VII cases, and the specification above of the *prima facie* proof required from respondent is not applicable in every respect in different factual situations."). In using a comparator to establish a *prima facie* case, the comparator must be "similarly situated in all relevant aspects." Silvera v. Orange County School Board, 244 F.3d 1253, 1259 (11th Cir. 2001).

8

non-discriminatory reason for its actions.[2] See Combs, 106 F.3d at 1528. The employer "need not persuade the court that it was actually motivated by the proffered reasons." Burdine, 450 U.S. at 254-55; see Chapman, 229 F.3d at 1024. If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.[3] Where the defendant articulates multiple, reasonable, legitimate and non-discriminatory reasons, plaintiff must rebut each of defendant's proffered reasons. See Chapman, 229 F.3d at 1024-25. Although the *prima facie* case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the *prima facie* case. See Combs, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas and Burdine framework, "[t]he ultimate burden of persuading the trier

---

[2] See Chapman, 229 F.3d at 1032 (A subjective reason is a legally sufficient, legitimate, non-discriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which the employer based its subjective opinion.).

[3] If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. Simply quarreling with that reason is not sufficient. Chapman, 229 F.3d at 1030.

9

of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at. 253. Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgement either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2108-09 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion);[4] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v. Dubberly, 210 F.3d 1334, 1339 (11th Cir. 2000); Alexander v. Fulton County, 207 F.3d 1303, 1336 (11th Cir. 2000); Combs, 106 F.3d at 1529-38 (interpreting Hicks and the post-Hicks

---

[4] The court in Chapman modified the statement in Combs contrary to this holding in Reeves after noting that the standard for granting summary judgment mirrors the standard for judgment as a matter of law. See Chapman, 229 F.3d at 1025, n.11.

10

case law); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-21 (11th Cir. 1993).

Defendant argues that plaintiff's inability to demonstrate that a similarly situated female employee was treated differently than Hodges prevents plaintiff from establishing a *prima facie* case on its claim that, by requiring Hodges to work the 8:00 a.m. - 5:00 p.m. shift rather than the 7:00 a.m. - 4:00 p.m. shift, defendant discriminated against Hodges on the basis of his sex. To establish its *prima facie* case plaintiff offers DeMarco Johnson as its only "comparator." She was on a team led by Trent Williams; Hodges was on a team led by Becky Galey. Williams and Galey both reported to Wildes, who reported to Tammy Yeager, who reported to Penny Blankenship. After Wildes randomly assigned the business analyst on the four teams to either the shift beginning at 7:00 a.m. or the shift beginning at 8:00 a.m., both Hodges and Johnson were assigned to the shift which began at 8:00 a.m.[5] Both of them were thereby changed from an earlier shift, which change created childcare arrangement problems for each of them. The changes were announced in separate team meetings, but there the similarity essentially ends.[6] When Johnson learned of

---

[5] In addition to Johnson, four other females were changed from an earlier shift to the 8:00 a.m. shift. Three of them requested that they be allowed to keep their old schedules. None of the requests were granted.

[6] Both of them were also given the opportunity to work their old schedules for two weeks while they tried to make new childcare arrangements. Johnson was allowed additional extensions by Williams or Wildes until Blankenship decided to allow her to continue working her old schedule.

the changes in her team meeting she did not object to the change in a raised voice; rather she later discussed her problem with Williams and Wildes and also initiated an "open door" discussion with Blankenship.  The "open door" policy is a method by which employees can speak to any leader within defendant without fear of retaliation.  There is no evidence that Hodges used or tried to use such policy.  During none of these meetings did Johnson complain or refuse to work the new schedule or act in a manner viewed by a supervisor as insubordinate or unprofessional or make a statement viewed by a supervisor as a lie.  As a result of Johnson's problems with the new schedule, Penny Blankenship, after consultation with Johnson's team leader, Williams, made the decision to allow Johnson to continue working her old schedule and told Williams to allow Johnson to do so if Williams could accommodate it from a business perspective.  <u>See</u> Affidavit of Blankenship.  When Hodges learned of the change in his team meeting he disagreed with the changes in a raised voice, frequently stating "this is not going to happen."  Wildes, who was present at the Galey team meeting, believed Hodges acted belligerently during the meeting.[7]  After the Galey team meeting Wildes informed Yeager of what had happened.  The day after the team meeting Hodges met with Wildes and Galey.  Wilder told Hodges his action during the previous day's team meeting was unacceptable and unprofessional, and she did not expect it to

---

[7] Following the meeting one employee on Hodges' team said to their team leader she was concerned about Hodges' behavior during the meeting.

12

occur again. Wildes was the decision-maker who refused to allow Hodges to work the earlier shift and directed him to begin his new shift the following week. As noted earlier, Blankenship was the decision-maker who "trumped" Wildes earlier decision assigning Johnson to the same shift as Hodges.

In order to establish a *prima facie* case of disparate treatment, a plaintiff must show a comparator who is "similarly situated in all relevant aspects." Silvera v. Orange County School Board, 244 F.3d 1253, 1259 (11th Cir. 2001). Based upon the totality of the circumstances, including the fact that Hodges and Johnson had different team leaders and the fact that the relevant decision-maker for Hodges and the relevant decision-maker for his comparator Johnson were different individuals, plaintiff has failed to come forward with a comparator who is similarly situation in all relevant respects. See Britton v. City of Poplar Bluff, Mo., 244 F.3d 994, 998 (8th Cir. 2001) (holding that rarely are two employees similarly situated in all relevant respects when there are different decision-makers.). Since there is no other evidence of discrimination present and plaintiff has failed to show the existence of an employee similarly situated to Hodges, defendant's motion for summary judgment is due to be granted. Holifield v. Reno, 115 F.2d 1555, 1562 (11th Cir. 1997). This conclusion also is sufficient to require summary judgment as to plaintiff's termination claim since that claim, in essence, is bottomed on the disparate treatment claim and Hodges insistence that he was unable to work

13

the 8:00 a.m. - 5:00 p.m. shift due to childcare problems.  But there is an additional reason why summary judgment is appropriate on the termination claim.  Assuming a *prima facie* case as to the termination claim, defendant has made a very strong showing of an articulated legitimate and non-discriminatory reason for its decision to terminate Hodges, which reason the plaintiff has failed to rebut.  See Combs, 106 F.3d at 1527-29 (explaining that once an employment discrimination plaintiff establishes a *prima facie* case, the burden of production then shifts to the defendant to articulate legitimate, non-discriminatory reasons for its action, following which the burden of production then shifts back to the plaintiff to offer evidence tending to show that the defendant's proffered reasons are really pretext for illegal discrimination); Chapman, 229 F.3d at 1024-25 (same as above).

Defendant has satisfied its burden by articulating the following legitimate, non-discriminatory reason for terminating plaintiff:  Yeager, who made the decision to terminate Hodges, believed that Hodges had lied to her twice, and was unwilling to try to make arrangements that would allow him to work the new schedule.  Yeager concluded Hodges was being insubordinate and should therefore be terminated.  While this conclusion is arguably subjective, a subjective opinion is nonetheless legally sufficient if the defendant articulates a clear factual basis for that opinion.  See Chapman, 229 F.3d at 1032.  The Eleventh Circuit has clearly stated that "[f]ederal courts 'do not sit as

14

a super-personnel department that reexamines an entity's business decision.  No matter how medieval a firm's practices, no matter how high-handed its decisional process, no mater how mistaken the firm's managers, the [court] does not interfere.  Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior.'"  See id. at 1030 (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (citations omitted)); see also Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984) (An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.")  Abel v. Dubberly, 210 F.3d 1334, 1339 n.5 (11th Cir. 2000).  In this case, defendant provided a legitimate reason for Hodges' termination.

    Certainly the paucity of evidence from plaintiff of pretext does not satisfy the requirement of Combs and Chapman which require a production of evidence to create a factual or credibility issue as to the articulated reason for the employment decision given by a defendant. Chapman, 229 F.3d at 1024-25; Combs, 106 F.3d at 1529.  Although plaintiff quarrels with defendant's reasoning for the termination, plaintiff has offered insufficient evidence to show that defendant's decision to terminate plaintiff was in fact motivated by a prohibited factor.  See Lee v. GTE Fla., Inc., 226 F.3d 1249, 1253 (11th Cir. 2000).  Because plaintiff has failed to rebut defendant's articulated,

legitimate and non-discriminatory reason, defendant's motion for summary judgment on plaintiff's termination is due to be granted for this reason in addition to the reason earlier stated.

In summary, the court finds that plaintiff has failed to establish its claims of Title VII discrimination. Because no material issues of fact remain and because defendant is entitled to judgment as a matter of law, summary judgment is appropriate. A separate order will be entered.

DONE this 11th day of April, 2002.

*[signature]*
SENIOR UNITED STATES DISTRICT JUDGE